# City of Scranton *v.* The Public Service Commission (No. 1).

*Public Service Company Law—Street railway companies—Contracts with municipalities—Rates.*

An increase of fares by a street railway company, as approved by the Public Service Commission will be sustained, even although the company operates under a municipal ordinance which con-

tains a provision for a maximum fare to be charged by the railway company, and the new rate exceeds that stipulated in the ordinance.

*Public Service Company Law—Increase of rates—Valuation—Rates pending valuation.*

The Public Service Commission may authorize a temporary increase of rates by a street railway company, pending a determinate valuation of the company's property devoted to public use.

All orders of the Commission as to rates are, to an extent, temporary, in that they may be changed by the commission, as conditions warrant.

The time when a new rate, to be charged by a Public Service Company, shall take effect, is fixed by the Public Service Company Law. And there is no difference in this respect, between a change from a rate fixed by a municipal ordinance, and, a change from any other original tariff or schedule. That it was the intention of the legislature that the rate filed with the public service company should take effect and be collectible, pending a determination by the commission as to its reasonableness, is seen from the fact that the act provides for a refund, in case the commission fixes a lower rate, and fails to give to the commission the power to suspend rates duly filed, posted, and published.

Argued November 19, 1919.   Appeal, No. 179, October T., 1919, by City of Scranton, from order of the Public Service Commission, Complaint Docket Nos. 1687-1917 and 2351-1918, in the case of City of Scranton v. The Public Service Commission, on appeal, and Scranton Railway Company.   Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER and KELLER, JJ.   Affirmed.

From the record it appeared that the Scranton Railway Company, as a public service company engaged in the transport of persons and property, filed a schedule of rates with the Public Service Commission, providing for an increase therein.   The complainant then filed a complaint with the Public Service Commission averring that agreeably to Article XVII, Section 9, of the Constitution, the City of Scranton had prescribed by certain franchise ordinances the maximum fare to be charged by street railway companies within its limits,

and that the Scranton Railway Company operating under the franchises covered by said ordinances, now proposed to violate the terms thereof by an increase of fares on file with the commission, that such increase was unjust and unreasonable, and praying the commission to make an order refusing to sanction the same.

The Public Service Commission, pending the determinate valuation of the respondent's property, made an order effective for one year from May 7, 1919, permitting the collection of a seven-cent fare. Complainant appealed.

*Error assigned* was the order of the commission.

*R. S. Houck*, City Solicitor, and with him *Jerome K. Barrett*, Assistant City Solicitor, for appellant.

*H. B. Gill*, for Scranton Railway Company, intervening appellee.

*Berne H. Evans*, Counsel, and with him *John Fox Weiss*, Assistant Counsel, for the Public Service Commission.

OPINION BY KELLER, J., December 8, 1919:

The Scranton Railway Company, impelled by a strike of its employees and the recommendation of the National War Labor Board in connection therewith, filed with the Public Service Commission, in accordance with the provisions of the Public Service Company Law of 1913, new schedules of rates, increasing the unit fare, first, from five cents to six cents, and later from six cents to eight cents. Within thirty days the City of Scranton filed with the Public Service Commission its complaint setting forth that said increases were invalid as violating certain ordinances granting the said railway company, or its constituent corporations, the right to construct lines of railway on the city streets and limiting therein the rate

of fare to be charged within city limits to five cents, and also on the ground that the proposed rate was unjust, unreasonable and unwarranted.   A number of hearings were held before the commission and a considerable volume of testimony taken, from which the commission found that the railway company must earn in order to meet its operating expenses and pay its taxes, the sum of $1,452,952.29, an increase of about $450,000, over 1917. Some testimony was also taken with reference to the other item to be considered in determining the reasonableness of the rate charged, viz: the fair return upon the property of the company devoted to public use.   To fix this accurately, a detailed valuation of the company's property was necessary, which would require a complete inventory of its physical property, and must obviously consume a great deal of time, during which the patrons of the company, must, under the provisions of the act, pay the scheduled rate of fare, receiving a certificate of such payment, as ordered by the commission.   Pending this determinate valuation of the company's property devoted to public use, the commission came to the conclusion, from the evidence presented by the complainant, and a reasonable allowance for going concern value and working capital, in connection with common engineering knowledge of the value per mile of such a street railway system, (Foltz v. Public Service Commission, infra), that an annual passenger revenue of $1,831,000, was not too much for the company to receive out of applied rates in order to maintain its service and its solvency; that a five cent fare was inadequate, and that a fare of at least seven cents, or four tickets for a quarter dollar, was justified temporarily and until the valuation ordered could be completed, and entered an order accordingly, effective for one year from May 7, 1919.   We are not satisfied, after a careful consideration of the law and the evidence, that the commission was without authority to make the order, under the circumstances, or that it was arbitrary or unreasonable.   All orders of the commission

are to an extent temporary, in that they may be changed by the commission as conditions warrant. We do not think that the commission exceeded its powers in limiting the duration of the order complained of to the exigency covered by the recommendation of the War Labor Board.

The right of the Public Service Commission to change a rate of fare fixed by a municipal ordinance granting consent to the use of the city streets, when found to be inadequate or unreasonable, has been upheld by this court in the cases of Wilkinsburg v. Public Service Commission, 72 Pa. Superior Ct. 423, and Foltz v. Public Service Commission, decided July 17, 1919, 73 Pa. Superior Ct. 24. It follows that if the Public Service Company Law confers this right, its provisions as to when the new rate shall take effect must govern: (see Art. II, Sec. 1 (f); Pittsburgh Rys. Co. v. Public Service Commission, 66 Pa. Superior Ct. 243). And there is no difference in this respect, contained in the act, between a change from a rate fixed by a municipal ordinance and from any other original tariff or schedule. That it was the intention of the legislature that the rate established by the public service company should take effect and be collectible pending a determination by the commission as to its reasonableness, is seen from the fact that the act provides for a refund in case the commission fixes a lower rate, and fails to give the commission power to suspend rates duly filed, posted and published.

The order of the commission is affirmed, and the appeal is dismissed at the costs of the appellant.

LINN, J., took no part in this decision.